IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY L. D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 18-cv-00890-CJP[2] |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in January 2015, alleging disability beginning on November 26, 2014. After holding an evidentiary hearing, ALJ George M. Bock denied the application on June 23, 2017. (Tr. 13-23). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 17.

in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following issue:

1. Whether the ALJ erred in finding plaintiff was able to return to a composite past job as generally performed.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically

> determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative

answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir.

2010), and cases cited therein.

## The Decision of the ALJ

ALJ Bock followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date and that plaintiff was insured for DIB only through December 31, 2019. The ALJ found that plaintiff had severe impairments of history of bilateral rotator cuff tears, status-post repair, and degenerative disc disease of the cervical spine. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work. Among other limitations, she cannot work overhead or reach above shoulder level, bilaterally.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do her past relevant work as a fast food manager as that job is generally performed in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of the medical evidence.

In a written report submitted in January 2015, plaintiff detailed her past job as a manager at McDonald's. (Tr. 165-166). In that job, plaintiff supervised the crew, but also prepared food, bagged food, prepared coffee, served customers,

cleaned the restaurant, counted money, surveyed wasted food, and picked up money from the bank. (Tr. 166). Plaintiff later completed a development questionnaire in which she stated she "managed and worked side by side with crew." (Tr. 230).

Plaintiff was represented by an attorney at the evidentiary hearing in June 2017. (Tr. 30).

Plaintiff testified that she worked as a manager at McDonald's in Cahokia, Illinois from 2001 to November 2014.[3] (Tr. 33). As plaintiff detailed, she not only supervised the crew, but also worked with them, addressing problems in food production and service. Plaintiff referred to these problem areas as "danger zones." Plaintiff stated, "wherever the danger zone was, that's where I had to go and work. And it didn't matter if it was the grill area, the kitchen, putting meat on the grill, backing up front counter, working the drive-through. I had to go wherever the problem was." (Tr. 43).

A vocational expert (VE) also testified. The VE classified plaintiff's job at McDonald's as a Manager, Fast Food Services, DOT 185.137-010. He described the performance of that job as light exertional. (Tr. 38).

The ALJ asked a hypothetical question which corresponded to the RFC assessment. The VE testified plaintiff was able to do her past job as a fast food manager as that job is generally performed. (Tr. 39).

Plaintiff's counsel then asked a few questions of the VE. Counsel asked if it

---

[3] The record is not clear on whether plaintiff began employment with McDonald's as a manager in 1977, or if she moved her way up to that position. *See* Tr. 33, 43, 165, 230.

is common for fast food managers to participate in the activities they are supervising. The VE responded that managers will do some counter work and supervise employees. (Tr. 41). Counsel then asked if fast food managers typically assist in cooking. The VE replied, "[n]ot traditionally if it's a very fast time." The VE also stated, "[w]ell, if they're managing the employees, that's what they're doing is making sure the employees are doing the work they're supposed to be doing." (Tr. 42).

After the hearing, plaintiff's counsel wrote a letter to the ALJ. (Tr. 232-33). In it, counsel stated that there were further questions that needed to be addressed by the VE. Counsel argued that further questions were necessary in consideration of plaintiff's statement that she "worked side by side with the crew" and her testimony that "she performed all of the duties required in the restaurant including cooking, grilling, and cleaning." Counsel argued that the ALJ should submit additional questions to the VE that included whether plaintiff's past relevant work as a manager at McDonald's was part of a composite job where she also performed the duties of a fast food cook. (Tr. 232). The ALJ did not respond to the letter or discuss the issue in his decision. Plaintiff was 56 years old on the date of the ALJ's decision. (Tr. 23, 161).

## Analysis

The VE testified that plaintiff's past job as a manager at McDonald's fit under the DOT description of Manager, Fast Food Services. ALJ Bock agreed with the VE's testimony in his decision. The ALJ further found that plaintiff was not

7

disabled because she could perform the functions of her past work as a fast food manager as that job is usually performed in the national economy. Plaintiff contends that her manager job was a composite job, and the ALJ erred in finding that she could perform her past job as it is usually performed.

According to the *Dictionary of Occupational Titles*, the job of Manager, Fast Food Services (DOT 185.137-010) involves the following:

> Manages franchised or independent fast food or wholesale prepared food establishment: Directs, coordinates, and participates in preparation of, and cooking, wrapping or packing types of food served or prepared by establishment, collecting of monies from in-house or take-out customers, or assembling food orders for wholesale customers. Coordinates activities of workers engaged in keeping business records, collecting and paying accounts, ordering or purchasing supplies, and delivery of foodstuffs to wholesale or retail customers. Interviews, hires, and trains personnel. May contact prospective wholesale customers, such as mobile food vendors, vending machine operators, bar and tavern owners, and institutional personnel, to promote sale of prepared foods, such as doughnuts, sandwiches, and specialty food items. May establish delivery routes and schedules for supplying wholesale customers. Workers may be known according to type or name of franchised establishment or type of prepared foodstuff retailed or wholesaled.

The DOT classifies the job of Manager, Fast Food Services as light. Light work requires lifting no more than 20 pounds, frequently carrying objects weighing up to 10 pounds, and a good deal of walking or standing. 20 C.F.R. §404.1567(a).

The job of Cook, Fast Food (DOT 313.374-010) is medium, and has the following requirements:

> Prepares and cooks to order foods requiring short preparation time: Reads food order slip or receives verbal instructions as to food required by patron, and prepares and cooks food according to instructions. Prepares sandwiches [SANDWICH MAKER (hotel & rest.) 317.664-010]. Prepares salads and slices meats and cheese, using

slicing machine, [PANTRY GOODS MAKER (hotel & rest.) 317.684-014]. Cleans work area and food preparation equipment. May prepare beverages [COFFEE MAKER (hotel & rest.) 317.684-010]. May serve meals to patrons over counter.

In determining whether a claimant can perform the functional demands and job duties of her past job, the "*Dictionary of Occupational Titles* (DOT) descriptions can be relied upon--for jobs that are listed in the DOT--to define the job as it is *usually* performed in the national economy." SSR 82–61, 1982 WL 31387, *2 (emphasis in original). However, "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." *Ibid.* Under the agency's Program Operations Manual, a composite job may not be considered in determining whether the claimant can perform her past job as it is generally performed in the economy. POMS DI 25005.020, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (visited Jan. 15, 2019).

Plaintiff stated in her written report that her job as manager required that she supervise the crew, count money, survey wasted food, and pick up money from the bank. These functions are solely within the DOT description of Manager, Fast Food Services. Her reports and testimony, however, primarily emphasize her seemingly frequent work with the crew, going right into the danger zones that she needed to address as manager for the store to run efficiently. Plaintiff prepared food, bagged food, prepared coffee, served customers, and cleaned the restaurant. (Tr. 166). As plaintiff stated in her testimony, "wherever the danger zone was, that's where I had to go and work. And it didn't matter if it was the grill area, the

kitchen, putting meat on the grill, backing up front counter, working the drive-through. I had to go wherever the problem was." (Tr. 43).

The Commissioner argues that plaintiff's job was not, in fact, a composite job. Rather, plaintiff's assertions merely reflect the duties of the DOT job description for Manager, Fast Food Services. Yet this argument ignores plaintiff's reports and testimony about the requirements of her job as a manager at McDonald's. It seems evident that the job required plaintiff to perform functions outside of the broad bounds of the Manager, Fast Food Services job description, including preparing coffee and cleaning the store. Interestingly, those duties are found in the Cook, Fast Food job description in the DOT.

Even ignoring these extraneous functions, the Commissioner appears to consider overlapping duties of the two categories squarely as evidence that plaintiff's job was correctly viewed as Manager, Fast Food Services, when these functions just as easily describe the Cook, Fast Food job. Obfuscating plaintiff's claim even further, the Commissioner next throws in a hefty helping of doubt about the frequency with which plaintiff completed such tasks, calling into question their significance. Despite this, plaintiff's reports and testimony tend to indicate that these tasks appeared to occur with some degree of regularity.

The Commissioner points out that the VE characterized plaintiff's past job as Manager, Fast Food Services, and not a composite job. The Commissioner argues that plaintiff's failure to point out a conflict with the DOT at the hearing precludes her from relying on that conflict here. The ALJ is required to identify and obtain

10

an explanation for any conflicts between a VE's testimony and information in the DOT. SSR 00-4p, 2000 WL 1898704, *2. However, where plaintiff has failed to identify a conflict at the hearing, she cannot demonstrate error unless the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009), citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

The Commissioner's argument fails for two reasons. First, in the Court's view, the conflict between the VE's testimony and the DOT was obvious, at least to a person familiar with the DOT descriptions of the Manager, Fast Food Services job and the Cook, Fast Food job. Secondly, plaintiff's counsel did raise a question as to whether the DOT description of Manager, Fast Food Services accurately described plaintiff's job.

At the hearing, plaintiff's counsel asked the VE whether it is common for fast food managers to participate in the activities they are supervising. The VE testified that managers will do some counter work and supervise employees, but he did not address the question fully. (Tr. 41). Counsel then asked if fast food managers typically assist in cooking. The VE replied, "[n]ot traditionally if it's a very fast time." When pressed, the VE explained, "if they're managing the employees, that's what they're doing is making sure the employees are doing the work they're supposed to be doing." (Tr. 42).

Admittedly, counsel did not use the phrase "composite job." Still, he did raise the general issue of the DOT description of the Manager, Fast Food Services

11

job and plaintiff's description of her job as a manager at McDonald's. The obvious conflict between the job as described in the DOT and the duties required of plaintiff at McDonald's was sufficient to alert the ALJ that the VE's testimony conflicted with the DOT. Additionally, counsel sent a letter to the ALJ further stating his point on the issue to no avail.

The parties have not cited any Seventh Circuit cases that directly touch on the composite job issue, and the Court's own research has not identified any such cases. Plaintiff and the Commissioner both cite a case from this Court holding that a remand is appropriate where testimony during the hearing should have alerted the ALJ that the claimant's past work is made up of more than one job. *Barnett v. Colvin*, 2014 WL 7450077, at *6-*7 (S.D. Ill. Dec. 30, 2014). Other courts in this Circuit have come to a similar conclusion. *See, e.g., Michalski v. Berryhill*, No. 16 CV 1590, 2017 WL 4081905, at *5-*7 (E.D. Wis. Sept. 14, 2017); *Cabaniss v. Colvin*, No. 13 CV 4244, 2014 WL 7450435, at *12 (N.D. Ill. Dec. 30, 2014); *Lipke v. Astrue*, 575 F. Supp. 2d 970, 982–83 (W.D. Wis. 2007). The Court finds the reasoning of these cases to be persuasive. Considering the questions raised by plaintiff about the specific nature of the job she performed, and evidence showing overlap in duties between two DOT jobs, it was incumbent for the ALJ to identify the conflicts and resolve them before finding that plaintiff performed a particular job. Simply put, if the plaintiff's manager job was indeed a composite job, the ALJ erred in finding at step four that plaintiff could do the job as it is usually performed.

The error at step four is case dispositive. Plaintiff was 56 years old on the date of the ALJ's decision. If she can do a full range of light work, but cannot do her past relevant work, the Grids dictate that she is disabled unless she has transferrable skills. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(g); Rules 201.12–201.16.[4] The VE identified some unskilled jobs that she could do, but did not testify about whether she had transferrable skills. So, if she is unable to do her past work, she may well be entitled to DIB.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:   January 17, 2019.**

---

[4] The Grids (20 C.F.R. Part 404, Subpart P, Appendix 2) are appropriate where the claimant has no nonexertional limitations and has the RFC to do a full range of work at a specified exertional level. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e). See also, *Haynes u. Barnhart*, 416 F.3d 621, 628–629 (7th Cir. 2005).

13

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**U.S. MAGISTRATE JUDGE**